José L. Benítez, peticionario y apelante, *v.* Félix Calzada, Alcaide de la Cárcel de Distrito de Humacao, demandado y apelado.

No. 2556.—*Visto:* Julio 20, 1925. *Resuelto:* Julio 24, 1925.

1. HABEAS CORPUS—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO—CUESTIONES A DECIDIR EN DICHO PROCEDIMIENTO.—En un procedimiento de *habeas corpus* sólo se decide si hay causa probable para que el peticionario esté detenido.

2. HABEAS CORPUS — JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO — APELACIÓN — CONSIDERACIÓN DE LA PRUEBA EN APELACIÓN.—Examinada la prueba presentada en el caso de autos, *se resolvió* era suficiente para demostrar la existencia de causa probable para la detención del peticionario.

3. HABEAS CORPUS—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO—EVIDENCIA ADMISIBLE—DECLARACIONES JURADAS.—Una declaración que envuelve un principio de prueba y que, tomada con otras, demuestra la existencia de causa probable para la detención es pertinente en un procedimiento de *habeas corpus* y no necesita ser corroborada.

4. HABEAS CORPUS—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO—EVIDENCIA ADMISIBLE—DECLARACIÓN DEL TAQUÍGRAFO DEL FISCAL.—La declaración del taquígrafo del fiscal es admisible en evidencia para justificar que determinadas declaraciones presentadas en evidencia fueron tomadas y transcritas por él como taquígrafo.

5. HABEAS CORPUS—JURISDICCIÓN, PROCEDIMIENTOS Y REMEDIO—EVIDENCIA ADMISIBLE—DECLARACIÓN DEL FISCAL.—La admisión de la declaración de un fiscal respecto a que tiene en su poder otras pruebas corroborantes y confesiones del acusado no constituye error fundamental, y menos aún cuando, prescindiendo de esa prueba, la presentada es suficiente para sostener la conclusión de la corte en la sentencia apelada.

RESOLUCIÓN de *Pablo Berga,* J. (Humacao), declarando sin lugar solicitud de *habeas corpus. Confirmada.*

C. Coll Cuchí y C. Cruzado Silva, abogados del peticionario apelante; *José E. Figueras,* abogado del apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

En este procedimiento de *habeas corpus* tramitado en la Corte de Distrito de Humacao dicha corte estimó que había causa probable para la prisión del peticionario y la única cuestión a resolver en esta apelación es si se ha justificado que hay tal causa probable para que el apelante esté detenido por infracción del artículo 511 del Código Penal en relación con el 50 del mismo texto, o sea, por haber intentado dañar o destruir maliciosamente bienes muebles o inmuebles ajenos.

En apoyo de su recurso alega el apelante que la corte inferior erró al declarar que por el resultado de toda la prueba presentada existía causa probable para su detención: al negarse a eliminar la declaración de Miguel Simons: al admitir la declaración del taquígrafo Luis Pérez y al no eliminar la del fiscal del distrito.

Para demostrar el fiscal en la corte inferior la existencia de causa probable para la detención del peticionario José L. Benítez, presentó la declaración suscrita y jurada por Miguel Simons ante el Juez Municipal de Vieques el día 5 de marzo de 1925 en la que manifestó que el día 2 del mismo mes y año como a las 2 de la mañana lo llamó Luis Daniel para que se levantara porque Pepe Benítez quería hablarle pero por lo tarde que era le contestó que lo dejara para el día siguiente: que como a los diez minutos volvió Daniel con Pepe al que atendió por la celosía de la persiana de su habitación: que se quedó solo con Pepe y éste le dijo: "Miguel, levántate y vamos a la casa de don José J. Benítez pues se trata de un asunto muy importante para él, pues bien puede costarle de dos a trescientos mil dólares a don Pepe," y que al oir eso le contestó que dejase eso para por la mañana porque don Pepe no los iba a creer, con lo que Pepe estuvo conforme y se retiró: que al siguiente día lunes no fué Pepe a su casa pero como a las once y media supo por Clemente Díaz que Pepe le había dicho que en la

Central Playas Grandes habían encontrado cartuchos con dinamita en los hornos de las máquinas, y que al oir esto salió para allá: que allí se informó con detalles de todo lo ocurrido, esto es, que se habían encontrado cartuchos de dinamita en los hornos de las locomotoras: que le preguntó a don Pepe si había recibido alguna carta en donde le pidieran alguna cantidad de dinero y le informó que no: que regresó al pueblo y le mandó aviso a Pepe que interesaba verse con él, que fuera a su casa seguida: que cuando llegó Pepe a su cuarto le preguntó que si lo que le interesaba hablar con él tenía relación con lo que había sucedido en la central, contestándole que sí: el testigo le indicó si quería acompañarlo a la quinta de don Pepe y le contestó que no tenía inconveniente pero que cada uno fuera en carro distinto para evitar que la gente los viera juntos: que cuando el testigo se vió con Pepe el día lunes le dijo entre otras cosas que él pertenecía a una sociedad comunista, que aparte de la dinamita que se había encontrado en los hornos de la locomotora habían puesto dos bombas de tiempo: que el testigo enteró a don Pepe de las entrevistas que tuvo con Pepe y viendo que Pepe no llegaba se dirigió hacia la central pero se encontró con él que ya se encaminaba a la residencia de don Pepe y volvió para atrás con Pepe: que allí Pepe por segunda vez hizo referencia que pertenecía a una sociedad comunista cuyo fin era destruir capitales, que habían tenido una reunión los socios y habían acordado destruir una de las compañías pertenecientes a los americanos en esta Isla pero mediaron ciertas cosas y entonces acordaron empezar por la Central Playas Grandes a lo que se opuso tenazmente haciéndoles saber que allí tenía familiares: que habían colocado dos bombas de tiempo, una grande y otra pequeña, pero que no sabía el sitio donde estaban colocadas: que don Pepe le contestó si estaba seguro que las bombas estaban puestas y le contestó que estaba completamente seguro, y entonces se le preguntó que cómo podría evitarse eso, informando que él podía evitarlo pues él sa-

bía que las bombas eran de tiempo y embarcándose tendría oportunidad de verse con sus asociados y así averiguar dónde se encontraban puestas y evitar que explotaran: que entonces don Pepe le ofreció el yate y dinero para que embarcara inmediatamente para la Isla y salió para Naguabo pues les manifestó que él podría verse con sus compañeros en Fajardo o Caguas y convino en que tan pronto se informara del sitio en que se encontraban las bombas se lo comunicaría por telégrafo, habiendo ya de antemano convenido la forma del telegrama que había de informarnos y efectivamente desde Caguas nos puso el telegrama enviado a la dirección del testigo y que dice así: ''María fuera peligro pero opinión es posible recaiga de nuevo. Dr. Just conferenciará mañana para ver otro tratamiento. Vigila gallo chimenea. Dr. Juliá.''

También presentó el fiscal dos declaraciones prestadas ante él, una del policía Antonio Marrero y la otra de Manuel Benítez Carrillo. De la primera resulta que en la mañana del 2 de marzo hizo un registro en la casa de José L. Benítez y encontró debajo de la cama dos paquetes de mechas y 32 ó 33 fulminantes de la misma clase que fueron encontrados en los cartuchos de la central. Y de la segunda aparece que dicho testigo Benítez Carrillo encontró en la central Benítez en Playas Grandes de Vieques cartuchos de dinamita en los hornos de las locomotoras y en los rieles, los cuales estaban puestos junto a las ruedas de las locomotoras como calzo de ellas: que José L. Benítez estuvo como tres semanas antes en la Central Playas Grandes e invitó al declarante para dar una vuelta por la central y habiendo entrado en el departamento de máquinas le preguntó cómo trabajaban y le hizo abrir algunos de los hornos y los vió trabajar e hizo que le enseñara un horno de una caldera de petróleo que hay por la parte de atrás y después, como era amigo suyo, lo invitó a que viera el resto de la factoría y estuvieron hasta el centro pero le dijo que sólo le interesaban las máquinas porque era lo que más le gustaba: que le

preguntó si las máquinas trabajaban de noche y le contestó que casi nunca, que cuántas había y qué trabajo le tocaba a cada máquina, y que cuando le estaba enseñando las calderas le dijo Pepe que aquél sería un buen sitio para volarlo con dinamita, lo que el testigo atribuyó a una broma.

Como esas dos declaraciones habían sido prestadas ante el fiscal, éste presentó a su taquígrafo Luis Pérez ante la corte, y manifestó que esas declaraciones habían sido tomadas por él en taquigrafía.

Como última prueba el fiscal ofreció su propia declaración ante la corte a la que dijo que tiene otras declaraciones corroborantes de los tres anteriores testigos y de admisiones hechas por el propio José L. Benítez, y otras del transporte de la dinamita de San Juan a Vieques en fecha contemporánea a la que se encontraron los cartuchos de dinamita puestos en las calderas de las locomotoras, y admisiones de José L. Benítez sobre el transporte de esa dinamita y en la forma ilegal en que fué transportada porque no fué conducida de acuerdo con el permiso que se le dió a José L. Benítez.

[1, 2] En un procedimiento de *habeas corpus* no se decide la culpabilidad del peticionario sino sólo si hay causa probable para que el peticionario esté detenido, si no presta la fianza que se le exigió; y tomada en conjunto la evidencia que se presentó, prescindiendo de aquellos particulares que son de referencia, como indudablemente lo hizo la corte inferior, estamos convencidos de que existe causa probable para la detención, por lo que la corte inferior no ha cometido el primer error que se le atribuye.

[3] En el segundo se limita el apelante a decir que la declaración de Simons era inmaterial y que no está corroborada. Esa declaración por sí sola no sería bastante para relacionar al apelante con el delito pero es un principio de prueba que con las otras demuestra que hay causa probable para la detención del peticionario, sin que sea necesario que esa declaración sea corroborada.

[4] La declaración del taquígrafo del fiscal también era admisible, pues habiendo declarado los dos testigos a que él se refiere ante el fiscal y habiendo él tomado las notas taquigráficas, su declaración es pertinente para justificar que esas dos declaraciones fueron las tomadas y transcritas por él.

[5] Con respecto a la declaración prestada por el fiscal ya hemos dicho en el caso de *El Pueblo* v. *Pillot,* 19 D.P.R. 264, donde también el fiscal dió una declaración idéntica a la de este caso, que su admisión no constituye error fundamental; pero aunque se prescindiera de ella, la otra prueba sería suficiente para sostener la resolución de la corte inferior por lo que *debe ser confirmada.*